UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X Case No.: 19-cv-03729
WILSON MOROCHO, DIEGO CAJAS,
JONATHAN ALEJANDRO ESPINOZA CAJAS, and
GUSTAVO MERCHAN, and
PAUL E. CASTRO-CORONEL

                                  *Plaintiffs*      **DECLARATION OF SUPRIYA KICHLOO, ESQ IN RESPONSE TO DEFENDANTS' ORDER TO SHOW CAUSE**

         -against-

MTP PARKING LOT, MTP INVESTEMENT GROUP
MTP OPERATING CORP., and LIC OPERATING
49 LLC

                                    *Defendants*
----------------------------------------------------------------X

    Supriya Kichloo, Esq an attorney duly admitted to practice in the United States District Court of the Eastern District of New York, affirms the following under the penalties of perjury:

1. I am an associate attorney with the law firm of Gordon & Gordon, P.C., attorneys for the plaintiffs in the above-captioned matter.

2. As Plaintiffs' counsel, I am familiar with the facts and circumstances discussed herein based upon personal knowledge and the files maintained by this office.

3. I make this declaration in response to defendants' Order to Show Cause filed on September 17, 2021, as directed by the Court by the Order dated August 6, 2021.

4. There can be no question that the defendants purposefully withheld the purported pay roll records that they recently produced on August 3, 2021. It is quite plain, based on a modest application of common sense to the facts surrounding these circumstances, that the defendants

1

knew that they did not pay the plaintiffs properly, and withheld these records showing that they did not pay their employees minimum wages.

5. The defendants' actions are unbelievable. After the passage of the discovery deadline, on August 3, 2021, the defendants produced 350 pages of payroll records, well over two (2) years after the instant action was commenced and a week after the deposition of David Avital, defendant's witness pursuant to FRCP rule 30(b)(6) was conducted by undersigned counsel. See annexed hereto as **Exhibit 1**, a copy of the deposition transcript of David Avital.

6. After reviewing and analyzing the payroll records it is abundantly clear that the payroll records were willfully withheld, as they clearly illustrate defendants' willful failure to pay the plaintiffs the wages they were owed during the relevant time period of 2013-2020. See annexed hereto as **Exhibit 2**, certain pages from the excel spreadsheets produced by the defendants for the calendar years 2017-2020.

7. The records show the plaintiffs were underpaid in violation of the minimum wage laws. The payroll records are weekly spreadsheets for the years 2015-2020 showing the name of the employee, marital status, tax deduction, regular rate, overtime rate, hours worked, regular hours worked, overtime hours worked, regular hours paid, overtime wages paid, gross weekly wages, tax deduction and net weekly wages.

8. For the year 2017 according to the payroll records, Paul Castro was paid at the rate of $11.00 per hour and overtime at the rate of $16.50. The other plaintiffs were paid minimum wages at the rate of $9.35 an hour and overtime at the rate of $14.85. The minimum wage rate in 2017 in New York City was $11.00 an hour. See **Exhibit 2**.

9. In 2018 all plaintiffs were paid minimum wage at the rate of $11.05 and overtime at the rate of $17.55. The minimum wage rate in 2018 in New York City was $13.00 an hour. See **Exhibit 2**.

10. In 2019 all plaintiffs were paid minimum wage at the rate of $12.75 and overtime at the rate of $20.25. The minimum wage rate in 2019 in New York City was $15.00 an hour. See **Exhibit 2**.

11. In 2020, plaintiff Paul Castro Coronel was paid minimum wage at the rate of $12.75 and overtime at the rate of $20.25. The minimum wage rate in 2020 in New York City was $15.00 an hour. See **Exhibit 2**.

12. By the defendants' own payroll records, the plaintiffs were paid less than minimum wages for the regular hours worked and overtime for years and this was clearly a willful act and the reason these records were not produced earlier.

13. The payroll records hurt the defendants just as much as their absence. For one thing, the payroll records for the calendar years 2013-2014 have not been produced. More importantly, the records produced from 2015-2020 show that all the plaintiffs were paid at the wrong hourly rate from 2017 onward.

14. Therefore, the defendants owe still owe the plaintiffs wages for regular hours and overtime even for the hours they presumably paid them for as per the payroll records. The table below summarizes what each plaintiff is owed, based on the defendants' own payroll records:

|  | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|
| Paul Castro | $- | $- | $- | $- |
| Gustavo Merchan | $14,448.00 | $19,117.28 | $- | $- |
| Wilson Morocho | $14,448.00 | $19,117.28 | $- | $- |
| Diego Cajas | $14,448.00 | $19,117.28 | $- | $- |
| Jonathan Cajas | $- | $- | $- | $- |

3

| | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|
| | 0 | $5,577.00 | $1,611.00 | $1,705.50 |
| | $5,681.85 | $5,099.25 | $7,050.00 | $- |
| | $5,848.95 | $6,093.75 | $1,611.00 | $- |
| | $5,318.85 | $5,070.00 | $2,582.25 | $- |
| | $2,730.07 | $2,753.40 | $1,404.00 | $- |

| Total | LD | Spread of Hours | LD |
|---|---|---|---|
| $8,893.50 | $8,893.50 | $12,336.25 | $12,336.25 |
| $51,396.38 | $51,396.38 | $15,450.00 | $15,450.00 |
| $47,118.98 | $47,118.98 | $15,450.00 | $15,450.00 |
| $46,536.38 | $46,536.38 | $15,450.00 | $15,450.00 |
| $6,887.47 | $6,887.47 | $11,455.00 | $11,455.00 |

| NYLL §195(1) Violation | NYLL §195(3) Violation | Pre-Judgment Interest | **Total** |
|---|---|---|---|
| $5,000.00 | $5,000.00 | $3,528.16 | $55,987.66 |
| $5,000.00 | $5,000.00 | $18,559.48 | $162,252.24 |
| $5,000.00 | $5,000.00 | $18,559.48 | $153,697.44 |
| $5,000.00 | $5,000.00 | $18,559.48 | $152,532.24 |
| $5,000.00 | $5,000.00 | $5,341.42 | $52,026.36 |

15. Additionally, at his deposition, by Mr. David Avital's own admission, the plaintiffs worked more than 10 hours per day, so they are entitled to spread of hours pay, as the garage was open from 6:00 am to 6:00 pm and the morning shift was usually from 6:00 am to 4:00 pm, M-F. See **Exhibit 1**, Avital Tr., P. 68, ln 9-18).

16. Failure to furnish the wage and notice statements are a violation of New York Labor Law 195(1) and (3) for which there is a maximum penalty of $5,000.00 each for each plaintiff. The records produced by the defendants fail to prove that the plaintiffs were provided with wage and

notice statements, which they were not, and thus each plaintiff is entitled to maximum penalty of $5,000.00 each for the New York Labor Law 195(1) and (3) violations. NYLL§§195(1) and (3).

17. After analyzing the payroll records, it is abundantly clear that the defendants failed to pay the correct wages to the plaintiffs for years and owe a substantial amount in damages because of their willful failure to pay wages.

18. The affidavit of David Avital, annexed to the defendants' order to show cause sharply contradicts the testimony given during his deposition, which occurred on July 26, 2021.

19. Mr. Avital plainly misrepresents the reason the payroll records were withheld without giving a transparent reason as to how he came in possession and control of the payroll records a week after his deposition was conducted.

20. Paragraph 19 of David Avital affidavit states, "The exact whereabouts of where the daily reports were maintained are unknown to me, because they were in the custody of Mr. Sudy – who is deceased – and in the custody of Defendants' parking lot managers, to wit: Plaintiff Coronel." See ¶ 9, Avital Aff.

21. In the same affidavit, however, he states that the parking lot managers reported the daily hours to the office managers who then input them into an excel spreadsheet. See ¶12-13.

> A. Employees will call and say how many hours they work, and they will issue them the checks. (P. 51 ln 23-25 Avital Tr.)

22. Therefore, not all daily reports would have been in custody of the late Mr. Sudy, since they were also reported to the office managers.

23. It should also be noted that the daily reports for the relevant time period have still not been produced, which would be the only evidence of contemporaneous record of the hours worked by the plaintiffs. The one-page document, annexed to the defendants' Order to Show

5

Cause as **Exhibit A** is dated 08-31-20, well after the plaintiffs were terminated from their employment and well after the commencement of this lawsuit.

24. The 350 pages of payroll records were a recreation of the excel spreadsheets that were used to calculate Defendants' weekly payroll and were maintained at the 46th St office. See ¶24-25.

> Q. Is 20 West 46th Street the office location for all of these companies that we've just spoken about?
>
> A. It's administrative office, yes. We -- yes. So we are the back office for them, yes.
>
> P. 35 ln 18-23 Avital Tr.

25. At his deposition, Mr. David Avital also testified that that is where he maintained his office and at the time of his deposition he knew of the location of other offices of the late Mr. Sudy.

26. He then goes on to clearly state in his affidavit that certain documents were provided to defendants' prior counsel and as shown in **Exhibit D** in the email exchange between prior and current counsel for defendants, the former shared documents via three (3) dropbox links on April 30, 2021, yet none of those records were produced until August 3, 2021. See ¶ 33.

27. At his deposition, Mr. Avital did not mention, even once that he or an employee from his office had provided relevant documents to prior counsel, Hang and Associates.

28. In paragraph 43 Mr. Avital admits that "Immediately following my deposition on July 26, 2021, I reviewed Defendants' books and records for the Excel Spreadsheets containing plaintiffs' payroll information." He does not provide a reason as to why he did not review those before the deposition given that plaintiff's counsel had served a Rule 30(b)(6) notice on defense counsel

which clearly listed the topics to be covered during his deposition. See annexed hereto as **Exhibit 3**, Updated Notice of Deposition Pursuant to Rule 30(b)(6).

29. Defendants own Rule 26(a)(2) disclosure states that the "Defendants are in the process of building an excel spreadsheet containing an exact calculation of damages incurred in this lawsuit, based on the time and payroll records that have been produced thus far," yet current defense counsel received records from prior counsel on April 30, 2021 and never supplemented the rule 26(a)(2) disclosure as required by FRCP Rule 26. See annexed hereto as **Exhibit 4,** Defendants Initial Disclosure Pursuant to FRCP Rule 26.

30. The records were always in the possession of defendants' office manager. According to the metadata in the Excel Spreadsheets, the Excel Spreadsheet for Plaintiffs' payroll records for 2019 was created by Rachel O'Neil on January 3, 2019, at 1:34 p.m. See ¶ 58. It is hard to fathom why defendant did not produce those records if they were created by the office manager.

31. Mr. David Avital knew Mr. Sudy used to sometimes use an office on another parking lot and there is no good reason it was not searched when this action was commenced.

Q. Before Mr. Sudy passed away, was he not working out of the 20 West 46th Street office?

A. No, he had an office in 23, operating in 23 lots over there.

Q. He had an office near the 23rd Street lot?

A. Inside the lot, yes. (P. 81. Ln 14-1 Avital Transcript)

32. At the deposition he stated his accountant David Luckman would have all the information or documents.

A. So all have information, we have. And we have information of all the payroll. And we gave it to -- I think we gave it. We have that information.

Q. Maybe you shared them with your accountant or you shared them with your attorney?

7

A. No, they got it from our accountant, I guess. (P. 119 ln 8-17 Avital Transcript)

33. In his deposition, Mr. Avital testified he was unaware where the excel spreadsheets were kept. According to his affidavit, he clearly knew where they were, and they were even provided to his prior counsel. There is no way to reconcile these diametrically opposed assertions. One is untrue, and it is that these records were just located.

Q. And were they recorded on a computer; were they kept somewhere?

A. No, it was -- I do not recall it in the computer. It is what they reported to the office, and all the rest was a daily report that described when they started, when they finished.

(P. 97-98 ln 20-25, ln 1-2 Avital Transcript)

34. The defendants willfully withheld these records until after the discovery deadline. They plainly show that the defendants failed the plaintiff's legal wages and underpaid them for years.

35. The reasons given for their nondisclosure are not remotely credible or availing and the Court should give the defendants the strongest allowable sanctions, including preclusion from using the payroll records in the instant matter.

Dated: September 29, 2021
      Forest Hills, NY

                                                Respectfully submitted,
                                                Gordon & Gordon, P.C.

                                                /S/Supriya Kichloo, Esq
                                                Supriya Kichloo, Esq